# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDITHA MEJIA,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of the<br>Social Security Administration,<br><br>    Defendant. | Case No. CV 16-6596 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.
## INTRODUCTION

Editha Mejia ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying her application for social security benefits. The parties consented, pursuant to 28 U.S.C.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for former Acting Commissioner Carolyn W. Colvin in this case. See Fed. R. Civ. P. 25(d).

§ 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is REVERSED and this case is REMANDED for an award of benefits consistent with this decision.

## II.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing her past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual

3

functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## III.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process in evaluating Plaintiff's case. At step one, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2018, and had not engaged in substantial gainful activity since July 27, 2013, her alleged onset date. (Certified Administrative Record ("AR") 17). At step two, the ALJ found that Plaintiff had the following severe impairments: psychosis, schizoaffective disorder, conversion disorder, and depression. (AR 17).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 18).

At step four, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can have "occasional" interaction with the public; work should not require more than occasional supervision, defined as requiring a supervisor's critical checking of work; work should be limited to simple, routine, repetitive tasks in a work environment not requiring more than occasional production or pace work; and work should involve only simple work-related decisions, with few if any changes in the work place. (AR 19). In making this finding, the ALJ ruled that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (AR 20). The ALJ also discussed the results of a consultative mental status examination performed by Dr. David Starr, Ph.D.; assigned "little weight" to a global assessment of functioning ("GAF") score[2] assessed by treating physician Dr. David Kent; and assigned "some weight" to the opinions of non-treating non-examining State Disability Determination Services physicians. (AR 21-22).

---

[2] Clinicians use a GAF score to rate the psychological, social, and occupational functioning of a patient. A GAF score between 41 and 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Morgan v. Comm'r, 169 F.3d 595, 598 n.1 (9th Cir. 1999).

5

At step four, the ALJ determined that Plaintiff could not perform her past relevant work. (AR 23). At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and concluded that Plaintiff could perform jobs available in significant numbers in the national economy, including dishwasher, potato peeler machine operator, and janitor. (AR 23-24). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Agency's rules. (AR 24).

**IV.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by "substantial evidence" in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record

as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

Plaintiff alleges that the ALJ erred in four ways. First, Plaintiff contends that the ALJ improperly found that Plaintiff did not meet a listing at step three. (Plaintiff's Memorandum of Points and Authorities ("P. Mem.") at 1, 4-7). Second, Plaintiff contends that the ALJ erred in failing to "evaluate and weigh" the opinion of Dr. Starr. (Id. at 1, 7-8). Third, Plaintiff contends that the ALJ improperly assigned "little weight" to the GAF score assessed by Dr. Kent and "some weight" to the opinions of the State agency physicians. (Id. at 1, 8-9). Fourth, Plaintiff contends that the ALJ erred in discrediting her testimony regarding the intensity, persistence and limiting effects of her symptoms. (Id. at 1, 9-11).

For the reasons discussed below, the Court agrees with Plaintiff that this case should be remanded because the ALJ failed to properly evaluate the medical evidence in formulating an RFC

and improperly discredited Plaintiff's testimony.[3]  Because the record as a whole, including the improperly discredited testimony and medical evidence, establishes that Plaintiff is entitled to benefits, the Court remands this case for an award of benefits.  See Garrison v. Colvin, 759 F.3d 995, 1019-20 (9th Cir. 2014).

**1.   The ALJ Did Not Properly Evaluate The Medical Evidence In Formulating an RFC**

Social Security regulations require the Agency to "evaluate every medical opinion [it] receive[s]," generally giving more weight to evidence from a claimant's treating physician.  20 C.F.R. § 404.1527(c).  Where the Agency finds the treating physician's opinion of the nature and severity of the claimant's impairments is well-supported by accepted medical techniques, and consistent with the other substantive evidence in the record, that opinion is ordinarily controlling.  20 C.F.R. § 404.1527(c)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); see also Garrison, 759 F.3d at 1012 (even when contradicted, treating or examining physician's opinion is owed deference, and often the "greatest" weight).

Where a treating source is not given "controlling weight," the Agency must give "good reasons" for the deviation.  20 C.F.R. § 404.1527(c)(2); Garrison, 759 F.3d at 1012 & n.11.  If the treating doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting

---

[3] Because the Court remands on these grounds, it is unnecessary to address Plaintiff's other arguments.

the treating physician's opinion. Orn, 495 F.3d at 632; Reddick, 157 F.3d at 725. "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Garrison, 759 F.3d at 1012-13 (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)). Here, the Court agrees with Plaintiff that the ALJ failed to properly evaluate the medical evidence, including the treating doctor's opinions, in formulating an RFC.

Plaintiff argues that the ALJ improperly failed to "evaluate and weigh" Dr. Starr's opinion. (P. Mem. at 1, 7-8). On November 12, 2013, Dr. Starr performed a consultative psychological examination. (AR 430-33). Plaintiff reported "problems with anxiety and depression," occasional panic attacks, hearing voices, some sleep disturbance and nightmares, and suicidal thoughts. (AR 431). Plaintiff reported that she had been prescribed Seroquel, haloperidol, and Loestrin. (AR 431). Dr. Starr examined Plaintiff's appearance, demeanor, and responses to several questions testing her mental status. (AR 431-32). Dr. Starr diagnosed Plaintiff with schizoaffective disorder, depressive type, first episode, currently in remission. (AR 432). Dr. Starr reported that Plaintiff had "problems with mood and thinking," "problems with mood and anxiety with occasional panic attacks,"

and hallucinations. (AR 432). Dr. Starr found that Plaintiff was "marginally oriented" and had difficulty paying attention and concentrating; her fund of information was "extremely limited"; she did not think abstractly; her judgment was impaired; and she required assistance to manage funds. (AR 432). The ALJ did not assign Dr. Starr's opinion any particular weight, but discussed the examination and stated that Dr. Starr "never opined that [Plaintiff] was precluded from work activity within the confines of the [RFC]." (AR 21-22).

Although the RFC assessed by the ALJ limited Plaintiff's interaction with others and the complexity of Plaintiff's work, (AR 19), the Court disagrees with the ALJ's apparent conclusion that the RFC fully accounts for the limitations and conditions observed by Dr. Starr. For example, the ALJ does not adequately explain how the RFC accounts for Plaintiff's limited fund of information, suicidal thoughts, and hallucinations, (AR 432), or whether these conditions have any effect on Plaintiff's ability to work. The Court therefore agrees with Plaintiff that the ALJ's discussion of Dr. Starr's observations was inadequate.

Plaintiff also alleges that the ALJ erred in assigning "little weight" to a GAF score of 45 assessed by treating physician Dr. David A. Kent, M.D., when Plaintiff was released from psychiatric hospitalization on September 6, 2013. (AR 21, 360). The ALJ gave this score "little weight" because it was "merely a snapshot view" of Plaintiff's functioning "at a particular time" and not reflective of "the entire period at issue." (AR 21). The Court

agrees with Plaintiff that the ALJ's opinion overlooks without explanation the GAF score of 45 assessed by treating physician Dr. Michael Millward on October 17, 2013, (AR 517-18), and a GAF score of 29 assessed by Dr. James Piktel at Intermountain Hospital on December 22, 2014. (AR 597). Elsewhere in his evaluation, Dr. Piktel reported that Plaintiff had been involuntarily admitted to Intermountain Hospital due to "overwhelming suicidal ideation and auditory hallucinations." (AR 594). Plaintiff "had a plan to kill herself with a knife, but allegedly her boyfriend took the knife away. In the ER, she was observed hitting herself with a chair." (AR 594).

Defendant argues that a GAF score is not a "medical opinion," and that the ALJ need not have discussed Plaintiff's GAF scores at all. (Defendant's Memorandum of Points and Authorities ("D. Mem.") at 6-8). Preliminarily, although a GAF score does not directly measure a claimant's ability to function in a work environment, the Agency has endorsed the use of GAF scores as one form of evidence reflective of mental functioning. SSA Administrative Message 13066 (effective July 22, 2013) ("We consider a GAF rating as opinion evidence."). In any event, the ALJ chose to analyze the GAF score assessed by Dr. Kent, rejecting it because it was "merely a snapshot view" of Plaintiff's condition. (AR 21). As noted supra, however, other physicians assessed low GAF scores at other times during Plaintiff's treatment history, directly contradicting the ALJ's sole stated reason for not affording more weight to Dr. Kent's score. Because there were numerous GAF scores indicating serious limitations in functioning, over a considerable

11

period of time, the ALJ should have evaluated this evidence. The ALJ therefore failed to provide adequate reasons for rejecting the score assessed by Dr. Kent. Garrison, 759 F.3d at 1012-13.

Plaintiff also argues that the ALJ erred in assigning "some weight" to the opinions of non-treating, non-examining State agency physicians. (AR 22). The ALJ's opinion acknowledged that the State agency opinions "do not as a general matter deserve as much weight as those of examining or treating physicians," but nevertheless ruled that "those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision)." (AR 22). The ALJ noted that the opinions "supported a finding of 'not disabled.'" (AR 22).

The Court agrees that the ALJ's reasons for assigning "some weight" to the opinions of the State agency doctors and relying on them in finding Plaintiff "not disabled" are so vague as to preclude review of his decision on this issue. To the extent that the ALJ relied on these opinions rather than the opinions of treating or examining physicians, he did not provide sufficient reasons for doing so. Garrison, 759 F.3d at 1012-13.

For the foregoing reasons, the Court agrees with Plaintiff that the ALJ failed to properly evaluate the medical evidence in formulating an RFC.
\\
\\

**2. The ALJ Improperly Discredited Plaintiff's Testimony**

Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting a claimant's testimony regarding the intensity, persistence and limiting effects of her symptoms must be "clear and convincing." Valentine v. Comm'r, 574 F.3d 685, 693 (9th Cir. 2009). The ALJ may use "ordinary techniques of credibility evaluation" during this inquiry. Smolen, 80 F.3d at 1284. The ALJ may consider, among other things: (1) a plaintiff's reputation for truthfulness; (2) inconsistencies in her testimony or between testimony and conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d 1273 at 1284. If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. Thomas, 80 F.3d at 958-59.

As Plaintiff observes, the ALJ's only clear statement regarding Plaintiff's credibility was:

> [Plaintiff] alleges an inability to perform work activity due to symptoms of her mental impairments such as an inability to concentrate, poor memory, limited focus, forgetfulness, panic attacks, and an inability to work with others due to anxiety and auditory hallucinations.

13

> Her physical complaints have been discussed above and found non-severe.
>
> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(AR 20). The ALJ wholly failed to identify the specific testimony that he found not credible and to link that testimony to specific portions of the record rebutting Plaintiff's testimony. The Court cannot conclude that the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony. See Burrell v. Colvin, 775 F.3d 1133, 1138-39 (9th Cir. 2014) ("The government argues that [c]laimant's testimony that she has, on average, one or two headaches a week conflicts with the medical record. As an initial matter, the ALJ never connected the medical record to [c]laimant's testimony about her headaches. Although the ALJ made findings . . . concerning [c]laimant's treatment for headaches, he never stated that he rested his adverse credibility determination on those findings. For that reason alone, we reject the government's argument that the history of treatment for headaches is a specific, clear, and convincing reason to support the credibility finding."); Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015). ("Our review of the ALJ's written decision reveals that . . . she simply

14

stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited. Although the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make, and ours only to review. . . . Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error.").

Defendant nevertheless argues that the ALJ provided appropriate reasons for discrediting Plaintiff's testimony. In analyzing whether Plaintiff's impairments were "severe," the ALJ stated that, although Plaintiff complained of physical pain following a car accident in July 2013, treatment notes in November 2013 stated that Plaintiff was in no "acute distress" and was not in pain. (AR 18). The ALJ also found that, although Plaintiff used a cane at times, there was "never a provider who prescribed a cane as there were no medical findings that she needed assistance with gait." (AR 18). The ALJ also noted that Plaintiff "did well with pain medications" after the accident, and "was quite active with walking and exercising. Thus, the accident was likely not as severe as alleged." (AR 20). Defendant also argues that the ALJ "noted a treatment record showing largely normal physical

15

findings." (D. Mem. at 9 (citing AR 20-21)). With respect to Plaintiff's mental impairments, Defendant argues that the ALJ "showed how Plaintiff's psychological conditions stabilized with medication after treatment in September 2013" and noted a "treatment gap" between May 2014 and January 2015. (D. Mem. at 9-10 (citing AR 21-22)).

A court can only affirm based upon the reasons that the ALJ actually relied upon in his decision. Bray v. Comm'r, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). As discussed supra, the ALJ provided no clear reasons for discrediting Plaintiff's testimony, and Defendant's "post hoc rationalizations" do not disturb this conclusion.

Moreover, several of the justifications asserted by Defendant are overstated or questionable. For example, although a claimant's failure to seek or follow prescribed medical treatment may suggest that the alleged impairment is not severe or disabling, see Fair, 885 F.2d at 603, the Ninth Circuit has cautioned against drawing such inferences when evaluating a claimant's asserted mental impairments. Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (claimant's failure to seek treatment for depression is an improper basis from which to conclude that the claimant does not suffer from

it).[4] Additionally, symptom-free periods or temporary improvement can be consistent with a claim of disability. See Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability.").

Defendant's remaining justifications for the ALJ's decision appear to be based on alleged inconsistencies between the medical evidence and Plaintiff's impairments. However, it is improper to reject subjective testimony based solely on its inconsistencies with the objective medical evidence. Bray, 554 F.3d at 1227.

For the foregoing reasons, the Court agrees with Plaintiff that the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's testimony regarding her limitations.

**3. The ALJ's Errors Warrant Remand For An Award Of Benefits**

The Court remands for an award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

---

[4] Moreover, the ALJ identified a "treatment gap" between May 2014 and January 2015, (AR 22), but, as noted supra, it appears that Plaintiff was psychiatrically hospitalized in December 2014 due to overwhelming suicidal ideation and hallucinations. (AR 594).

Garrison, 759 F.3d at 1020 (citations omitted). The "credit-as-true" rule allows courts the flexibility to remand for further proceedings only where the record as a whole "creates serious doubt" that a claimant is disabled. Id. at 1021.

Remand for benefits under Garrison is appropriate. The Court is satisfied that the record has been fully developed, that further administrative proceedings would serve no useful purpose, and that if the discounted testimony and opinions were credited as true, Plaintiff would be entitled to benefits.

Particularly, the Court observes that the record as a whole leaves no serious doubt that Plaintiff is disabled. Garrison, 759 F.3d at 1021. Plaintiff was 51 years old at the time of the April 2, 2015 hearing before the ALJ. (AR 55). She testified that her body "hurts a lot," her right hand "malfunctions," and she hears voices, which tell her to "run" or "kill [her]self," "a lot." (AR 60, 64). Plaintiff's medical history documents two hospitalizations for psychiatric issues along with medical and physical impairments that, taken together, would be disabling.

The Court also notes that Plaintiff was granted disability benefits for a subsequent application covering the period after June 16, 2015. (Dkt. No. 19). Although Defendant is correct that the subsequent grant of benefits is not itself determinative of issues in this case, which covers an earlier time period, (D. Mem. at 11-12), it has some impact on the Court's analysis of whether there would be any value in further administrative proceedings.

Accordingly, the Court remands with directions to the Agency to calculate and award benefits to Plaintiff.

## VI.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this case for the award of benefits. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 22, 2017

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**